IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THE REDEVELOPMENT AGENCY OF THE
CITY OF STOCKTON,

    Plaintiff,

    v.

BURLINGTON NORTHERN AND SANTA
FE RAILWAY CORPORATION, et al.,

    Defendants.

No. Civ. 05-2087 DFL JFM

MEMORANDUM OF OPINION
AND ORDER

Plaintiff Redevelopment Agency of the City of Stockton (the "Agency") moves for a preliminary injunction to compel defendants Burlington Northern and Santa Fe Railway Corporation ("BNSF") and Union Pacific Railroad Company ("Union Pacific") to create, within the next three months, a remedial action plan to clean up diesel contamination on properties identified as Areas 4 and 24. The Agency asserts that defendants are "responsible parties" under the California Polanco Redevelopment Act ("the Polanco Act"), which provides a mechanism for compelling responsible parties to remediate contamination. Cal. Health & Safety Code §

1

33459 et seq. As discussed below, the Agency raises serious questions, but fails to show probable success on the merits, irreparable injury, or that the balance of hardships or public interest tips in its favor. Therefore, the Agency's motion for a preliminary injunction is DENIED WITHOUT PREJUDICE.

I.

The Agency owns three contiguous city blocks in Stockton that the Agency designates as "Areas 3, 4, and 24." (Mot. at 5; Opp'n at 2.) This case arises out of soil and possible groundwater contamination on that property. (Mot. at 5.) The parties agree that defendants held at least an easement interest in portions of a railroad spur and operated a rail line that traversed all three areas from 1983 to 1989. (Id.; Gracco Decl. Ex. C.)

In July 2004, during grading activities undertaken to develop Area 3, the Agency's contractor discovered petroleum contamination below a "french drain" on the parcel that followed the north-south trend of the former railroad spur. (Mot. at 5; Opp'n at 3.) The Agency's contractors took soil samples from Area 3, but not from Areas 4 or 24. (Opp'n at 3.) Because of the contamination, the Agency halted construction and notified the Central Valley Regional Water Quality Control Board ("Regional Board") and the Department of Toxic Substances Control. (Mot. at 5.)

In August 2004, the Agency exercised its authority under the Polanco Act and issued a corrective action notice to defendants.

2

(<u>Id.</u>)  The notice instructed defendants to prepare a remedial action plan to clean up Area 3.  (<u>Id.</u> at 5-6.)  Because defendants did not respond, the Agency submitted and completed a work plan approved by the Regional Board at its own expense. (<u>Id.</u> at 6.)  The Agency later sold Area 3 to a developer who constructed the "WorkNet Building" on the property.  (Opp'n at 4.)

Because the trend of contamination appeared to follow the north-south line of the railroad by means of the french drain, the Agency issued another corrective action notice to defendants on December 9, 2004 for Areas 4 and 24.  (Mot. at 6.)  Defendants have not yet responded to this notice.  (<u>Id.</u>)  Therefore, the Agency alleges that it "is now forced to seek injunctive relief as permitted" by the Act.  (<u>Id.</u>)

II.

The traditional four part test for granting a preliminary injunction looks to whether the movant has shown: (1) a strong likelihood of success on the merits; (2) irreparable injury if the injunction is not granted; (3) a balance of hardships in the movant's favor; and (4) the public interest favors granting the injunction.  <u>See</u> <u>Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League</u>, 634 F.2d 1197, 1200 (9th Cir. 1980).  In the Ninth Circuit, the moving party can meet its burden by making "a clear showing of either: (1) a combination of probable success on the merits and a possibility of irreparable injury if relief is not granted, or (2) the existence of serious questions going to

3

the merits and that the balance of hardships tips sharply in its favor." Int'l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 822 (9th Cir. 1993). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Taylor By and Through Taylor v. Honig, 910 F.2d 627, 631 (9th Cir. 1990). At best, the Agency raises serious questions, but it has not shown irreparable injury, probable success on the merits, or that the balance of the hardships or public interest tip sharply in its favor.

A.  Irreparable Injury

When seeking a preliminary injunction, the moving party must demonstrate a significant and immediate threat of irreparable injury. Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 725 (9th Cir. 1999); Caribbean Marine Svcs. Co., Inc. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988). A demonstration of "speculative injury" is insufficient. Baldridge, 844 F.2d at 674. The Agency argues that if defendants do not prepare and execute a remedial action plan within the next three months, it will suffer irreparable harm in several ways.

First, the Agency states that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." (Mot. at 11-12 (citing Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 544-545 (1987); Sierra Club v. United States Forest Serv., 843 F.2d 1190 (9th Cir. 1988)).) However,

4

the cases relied upon by the Agency are not applicable here because, like most environmental injunction cases, they deal with the threat of future, imminent environmental injury.[1]  In contrast, the Agency seeks a remedy for an injury that occurred over twenty years ago.  The Agency fails to show why waiting a few more months until the conclusion of trial for a remedy poses a significant and immediate threat to the environment.

Second, the Agency claims it will suffer irreparable harm because potential developers are deterred from building on the property by the contamination, and the Agency, therefore, is losing tax revenue.  (Reply at 6 (citing Starlight Sugar, Inc. v. Soto, 114 F.3d 330, 332 (1st Cir. 1997) (holding that loss of a unique or fleeting business opportunity can constitute irreparable harm)).)  This argument is equally unavailing.  Although plans for an office building on a portion of Area 24 were recently abandoned because of the threat of contamination, the Agency has not shown that the opportunity was unique or fleeting.  Moreover, any loss in tax revenue can be compensated through an award of money damages.

Third, the Agency suggests for the first time in its reply brief that children who use the playground at the children's museum located on Area 24 are at risk.  (Reply at 5.)  However,

---

[1] In Amoco, Alaskan native villages brought an action to enjoin the Secretary of Interior's sale of oil and gas leases for federally owned lands in the outer continental shelf of Alaska. Similarly, in Sierra Club, plaintiff brought an action under the National Environmental Policy Act challenging the Forest Service's decision not to prepare an environmental impact statement for nine timber sales in a national forest.

5

all parties agree that the french drain is at least four feet underground and that the playground is paved.  The Agency has shown no evidence of airborne contamination.  Even if the contamination presented a hazard, the requested relief would not resolve the problem.  The Agency seeks an order requiring defendants to create and execute a remediation plan within the next three months.  Assuming this were possible, the children would still be at risk until the plan was completed, a lengthy prospect.  In the meantime, it is incumbent upon the Agency, as the owner of the property, to take the proper measures to prevent harm to the children and the public.[2]

Finally, the Agency claims it cannot wait until the conclusion of trial to recover because it "does not have sufficient resources to remedy all hazardous materials within its redevelopment project areas" and then sue to recover the costs through legal action later.  (Mot. at 13 (citing State of Cal. on Behalf of Cal. Dept. of Health Svcs. v. B&R Davis Fertilizers, Inc., 1994 WL 377788 at *7 (9th Cir. 1994)).)  However, as discussed above, the Agency has not yet shown why the property must be remediated in the next three months as opposed to waiting for the conclusion of trial.

---

[2] Such measures would likely include fencing off the excavation site and informing parents of any potential risks.  In point of fact, the record before the court does not suggest a risk to children and the suggestion by the Agency to the contrary, on this record, should not have been made.

6

For these reasons, the Agency has failed to demonstrate a significant and immediate threat of irreparable injury.

B.   <u>Likelihood of Success on the Merits</u>

Generally, the movant must show that there is a "fair chance" of success on the merits. <u>Johnson v. Cal. State Bd. of Accountancy</u>, 72 F.3d 1427, 1429-30 (9th Cir. 1995). However, a request for mandatory injunctive relief, like that sought here, is "subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." <u>Dahl v. HEM Pharmaceuticals Corp.</u>, 7 F.3d 1399, 1403 (9th Cir. 1993). Moreover, the burden on plaintiff "is a heavy one where, as here, granting the preliminary injunction will give [plaintiff] substantially the relief it would obtain after a trial on the merits." <u>Dakota Indus., Inc. v. Ever Best Ltd.</u>, 944 F.2d 438, 440 (8th Cir. 1991) (citations omitted); <u>see</u> <u>also</u> <u>Tanner Motor Livery, Ltd. v. Avis, Inc.</u>, 316 F.2d 804, 808 (9th Cir. 1963) ("[I]t is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial.")

The Agency has failed to show that the facts and law clearly favor its position.  The Agency argues that defendants are responsible parties under the Polanco Act, making them liable for the clean-up costs of Areas 4 and 24.  However, this claim depends on the resolution of complex factual disputes that are difficult to resolve at this time.

7

For example, there is a significant dispute about whether defendants are "responsible parties." A "responsible party" is "any person described in subdivision (a) of Section 25323.5 of this code or subdivision (a) of Section 13304 of the Water Code." Cal. Health & Safety Code § 33459(h). Section 25323.5 defines "responsible party" as those persons described in the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Under CERCLA, a "responsible party" includes "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of."[3] 42 U.S.C. § 9607(a). However, prior owners of property are not responsible for gradual passive migration of contamination that took place during their ownership, because the migration is not a "disposal" under CERCLA. Carson Harbor Village, Ltd. v. Unocal Corp., 270 F.3d 863, 879 (9th Cir. 2001).

Similarly, section 13304 of the Water Code defines "responsible party" as "[a]ny person who . . . has caused or permitted, causes or permits, or threatens to cause or permit any waste to be discharged or deposited where it is, or probably will be, discharged into the waters of the state and creates, or threatens to create, a condition of pollution or nuisance." Cal. Water Code § 13304(a). However, the "cause or permit" language

---

[3] CERCLA also provides other definitions of "responsible party," but they are not relevant here.

8

requires either an affirmative act or actual knowledge of the discharge.  In re San Diego Port Dist., 1990 WL 272135 at *3 (Cal. State Water Res. Control Bd. 1990) ("Where the landowner has knowledge of the activity and has the ability to control the activity, it is reasonable to conclude that such landowner is a discharger.")

At this point, it is difficult to determine whether defendants are responsible parties because it is unclear: (1) who was responsible for the french drain; (2) when the leak occurred;[4] (3) whether defendants owned or operated the parcels when the disposal occurred; (4) whether the contamination resulted from a slow leak or a sudden event; (5) whether defendants had any knowledge of the french drain or the contamination; and (6) whether defendants caused the leak.  During oral argument, the Agency's counsel asserted that one of defendants' predecessors must have owned or operated business on the parcels when the leak occurred.  However, plaintiffs have not provided any evidence in support of this assertion.

The evidence presented by the Agency shows that the rail line was constructed by CalTrans sometime after 1968.  (Gracco Decl. in Support of Plaintiff's Reply, Ex. B.)  In an exhibit supporting its motion, the Agency introduces a deed that seems to show that Union Pacific's predecessor in interest, Southern

---

[4] Although the parties agree that the release occurred more than 20 years ago, they cannot provide any more specific information.

9

Pacific Transportation Company (SPTC), gained an ownership interest in Area 24 beginning in 1975. (Gracco Decl. in Support of Mot. Ex. A.)  The Agency then presents a contradictory deed in support of its reply that suggests that SPTC gained an ownership interest in Area 24 and "appertanances thereto" in 1927.  (Gracco Decl. in Support of Reply, Ex. F.)  The Agency fails to explain why a 1975 deed would be necessary if SPTC acquired the property in 1927.  Nor does the Agency explain why SPTC would need an easement (which it acquired in 1983) if it already owned the property.  Because the facts surrounding defendants' ownership interests are ambiguous, at best, it is impossible to tell whether any of the defendants owned the property or operated business on it at the time of disposal.

In addition, the Agency has not shown that defendants had any control over or knowledge of the french drains.  As discussed above, knowledge and control are deciding factors in determining whether a party is liable under Cal. Water Code §13304(a).  <u>In re San Diego Port Dist.</u>, 1990 WL 272135 at *3.  The Agency argues that knowledge and control are irrelevant because "regardless of who installed the drain, the defendants' railroad tracks and associated bedding benefitted from the french drain." (Reply at 3.)  However, no case law is cited for this proposition, nor did the court locate any.

Ultimately, the question whether defendants were responsible parties hinges on questions of fact that cannot be resolved on

10

this spare record. For these reasons, while the Agency has raised serious questions, it has not demonstrated a likelihood of success on the merits sufficient to warrant a mandatory injunction.

C. <u>The Balance of Hardships</u>

The balance of hardships tips in favor of defendants. "The basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." <u>Chalk v. United States Dist. Court Cent. Dist. of Cal.</u>, 840 F.2d 701, 704 (9th Cir. 1988). The mandatory injunction sought here does not aim to preserve the status quo. Rather, it would require defendants to actively prepare and execute a costly remediation plan, even though defendants are no longer owners or operators and may not be "responsible parties" under the Act.

A delay in the clean up of Areas 4 and 24 imposes a hardship on the Agency because it delays development and causes the Agency to lose tax revenue. However, the Agency acquired this property over 16 years ago and only began development on the property in 2004. While waiting another year may be unfortunate, it does not compare to the hardship the Agency seeks to impose on defendants.

The Agency noted during oral argument that this case may take several years to litigate and resolve. To remedy this potential problem, the court orders the parties to suggest a revised scheduling order that will bring the case to resolution

11

in this court at a brisker pace.

D.  Public Interest

"The less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." Southwest Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir. 2003) (en banc). The Agency asserts that "[w]hen blighted conditions are remedied, the community at large benefits as development serves as a catalyst to the economic financial well-being of a community and its citizens." (Reply at 7.) While this is a significant interest, it does not support prematurely placing liability on parties who may not be responsible. Because there are equally important public interests at stake on both sides, this factor does not weigh in favor of granting a preliminary injunction. Univ. of Haw. Prof'l Assembly v. Cayetano, 183 F.3d 1096 (9th Cir. 1999).

III.

The Agency raises serious questions, but fails to show probable success on the merits, irreparable injury, or that the balance of hardships or public interest tips in its favor. Therefore, the Agency's motion for a preliminary injunction is DENIED WITHOUT PREJUDICE. If, at a further point in the case, plaintiff can make a stronger showing, the court will entertain a renewed motion. The court also orders the parties to suggest a

revised scheduling order that will allow for a quicker resolution of this case.

IT IS SO ORDERED.

Dated: 4/11/2006

                                        /s/ David F. Levi
                                        DAVID F. LEVI
                                        United States District Judge